# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW MEXICO CATTLE GROWERS' ASSOCIATION,<br><br>                                    Plaintiff,<br><br>   v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>                          Federal Defendants,<br><br>CENTER FOR BIOLOGICAL DIVERSITY, MARICOPA AUDUBON SOCIETY.<br><br>                          Defendant-Intervenors. | No. 1:21-cv-3263-EGS |

**PLAINTIFF'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD**

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 7(b), LCvR 7, and this Court's May 6, 2022, Minute Order, Plaintiff New Mexico Cattle Growers' Association ("Cattle Growers") respectfully moves this Court to compel completion of the administrative record with two documents. The documents are (1) Email from Gjon Hazard, Fish & Wildlife Biologist, U.S. Fish & Wildlife Serv., to Angela Picco, et al. (May 9, 2017, 5:04 PM) (the "Hazard Email"), attached as Exhibit D to the Declaration of Damien M. Schiff ("Schiff Decl."); and (2) Email from Greg Beatty, Fish & Wildlife Biologist, U.S. Fish & Wildlife Serv., to Gjon Hazard, et al. (May 15, 2017, 11:15 AM) (the "Beatty Email"), attached as Exhibit E to Schiff Decl. (together, the "Emails").

This case challenges the legality of the United States Fish and Wildlife Service's denial of Cattle Growers' petition to remove the southwestern willow flycatcher from the federal list of threatened and endangered species and the Service's listing of the southwestern willow flycatcher as an endangered "subspecies" pursuant to the Endangered Species Act. The Emails are part of the administrative record and should be included and reviewed in this case because they were considered by the Service when it denied the petition, *see infra* Arg. Section I.A., and they enjoy no privilege against inclusion in the record, *see infra* Arg. Section I.B.

Pursuant to LCvR 7(m), counsel for Cattle Growers contacted counsel for the Service and Defendant-Intervenors Center for Biological Diversity and Maricopa Audubon Society (the "Intervenors") to solicit the parties' positions on this motion. Counsel for the Service indicated that the Service opposes this motion. The Defendant-Intervenors take no position.

## BACKGROUND

**I. The Southwestern Willow Flycatcher's Listing as an Endangered "Subspecies," Zink (2015), Cattle Growers' Petition, and Zink (2016/2017)[1]**

To receive the substantial protections afforded by the Endangered Species Act, a "species" must be determined to be "endangered" or "threatened," based on certain factors. *See* 16 U.S.C. § 1533(a). While the ESA defines "species," it does not define the term "subspecies." *See id.* § 1532. The Service has never promulgated a rule defining the term "subspecies." ECF No. 1, ¶¶ 29–30; ECF No. 10, ¶¶ 29–30.

The Service considers the southwestern willow flycatcher (*Empidonax trailli extimus*) to be an endangered subspecies of the widely distributed willow flycatcher (*Empidonax trailli*). 60 Fed. Reg. 10,694 (Feb. 27, 1995). The validity of that subspecies designation was challenged by Dr. Robert Zink and colleagues in a 2015 study that reanalyzed much of the research on which the flycatcher's subspecies designation had been based. *See* Robert M. Zink, *Genetics, Morphology, and Ecological Niche Modelling Do Not Support the Subspecies Status of the Endangered Southwestern Willow Flycatcher (Empidonax trailli extimus)*, 117 The Condor 76 (2015) (Zink 2015), *available at* FWS020345–FWS020356.[2] Relying in part on this new study, Cattle Growers in 2015 petitioned the Service to remove the flycatcher from the federal list of threatened and endangered species. ECF No. 1, ¶ 3 (describing the Petition to Remove the "Southwestern" Willow Flycatcher Empidonax trailli "extimus" From the List of Endangered Species Under the United

---

[1] Dr. Zink's study, *Current Topics in Avian Conservation Genetics With Special Reference to the Southwestern Willow Flycatcher*, 9 The Open Ornithology J. 60 (2016), was submitted to the Service in draft form in 2016 and resubmitted to the Service in 2017 after final publication. Cattle Growers refers to this study as Zink (2016/2017) in this motion to reflect the submission dates.

[2] Cattle Growers includes citations to the proposed administrative record that was mailed to Cattle Growers' counsel by the Service on June 13, 2022, *see* ECF No. 15. The cited portions of the proposed administrative record are included in the Appendix to this Motion.

States Endangered Species Act Due to Significant New Data that Demonstrates Original Error (hereinafter, the "Petition")).

After the Petition was filed, Dr. Zink submitted a draft 2016 follow-up study to the Service. *See* FWS000384–FWS000385 (emails between Dr. Robert Zink, Professor, School of Natural Resources and School of Biological Sciences, University of Nebraska, and Brady McGee, Fish & Wildlife Biologist, U.S. Fish & Wildlife Serv. (July 1, 2016, and Jan. 5, 2017)). This study responded to various critiques that other scientists had advanced against Dr. Zink's 2015 research. It also contained new information and analysis supporting Dr. Zink's prior work questioning the flycatcher's subspecies designation, as well as highlighting various critical mistakes made in a leading defense (Theimer et al. (2016)) of the flycatcher's subspecies designation. *See* ECF No. 1, ¶ 63; *see also Current Topics in Avian Conservation Genetics With Special Reference to the Southwestern Willow Flycatcher*, 9 The Open Ornithology J. 60 (2016) (Zink (2016/2017)), *available at* FWS020357–FWS020366. A final published version of Zink (2016/2017) was submitted to the Service on January 5, 2017. *See* FWS000384–FWS000385.

**II.     The Petition Denial and Counsel's FOIA Request**

Although the Service made an initial determination that the Petition presented substantial information indicating that delisting of the flycatcher may be warranted because of taxonomic error, *see* 81 Fed. Reg. 14,058, 14,070 (Mar. 16, 2016), the agency ultimately denied the Petition on the merits and reaffirmed its previous determination that the southwestern willow flycatcher is a subspecies. *See* 82 Fed. Reg. 61,725 (Dec. 29, 2017).

In the Final Rule denying the Petition, the Service assessed several studies. However, the Service refused to engage with Zink (2016/2017) because, according to the agency, the study contained "no new data." FWS000791. The Service did not, however, explain how that could be

so in light of the undisputedly new material—including phylogenetic and statistical analyses—that appear only in Zink (2016/2017), *see* FWS020357–FWS020366, and that were designed in part to respond to critiques of Zink (2015). *Cf.* FWS000791.

Following the Petition denial, counsel for Cattle Growers submitted a request to the Service pursuant to the Freedom of Information Act (FOIA). That FOIA request asked for "the disclosure of all documents relied on, directly or indirectly, by the Service as part of its decision to deny the flycatcher delisting petition, 82 Fed. Reg. 61,725 (Dec. 29, 2017), including all written communications and memoranda." *See* Schiff Decl. ¶¶ 3–4 and Exh. A thereto. The Service responded by releasing numerous documents, including the Hazard Email and the Beatty Email. *See* Schiff Decl. ¶¶ 9–10 and Exhs. D, E, thereto. Although the Service redacted many of the released documents and withheld others, citing various FOIA disclosure exemptions, it released the Hazard and Beaty Emails in full and unredacted form. *See* Schiff Decl. ¶¶ 10 and Exhs. D, E, thereto.

These Emails concern Zink (2016/2017). The Hazard Email is from the Service's avian expert Gjon Hazard. In the Email, Mr. Hazard states that he reviewed the Service's proposed Petition denial and noticed that it did not contain any discussion of Zink (2016/2017). That was a problem, he thought, because the study was a "rebuttal . . . to the Theimer et al. (2016) critique of Zink (2015)," which latter studies "play such a central role to the petition and our response." Exh. D to Schiff Decl. The Beatty Email is a response from Service official Greg Beatty to Mr. Hazard's Email. In that response, Mr. Beatty states that, although "[w]e did reference Zink's Open Ornithology letter briefly as something we received and looked at . . . it didn't provide any new information." *See* Exh. E to Schiff Decl. The response contained within the Beatty Email is consistent with the conclusion contained in the Final Rule, that because "no new data were

4

presented in [Zink (2016/2017)]," the study did not merit any treatment in the Service's evaluation. *See* FWS000791.

**III.    Cattle Growers' Lawsuit**

On December 13, 2021, Cattle Growers filed this lawsuit challenging the Service's denial of their Petition to remove the southwestern willow flycatcher from the federal list of threatened and endangered species. *See* ECF No. 1. Cattle Growers alleged that, in denying the petition without articulating any standard or definition for what constitutes an avian subspecies, the Service's final rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the Endangered Species Act, 16 U.S.C. §§ 1531–1544, and the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Cattle Growers further alleged that, by denying the Petition without meaningfully engaging with the new information presented in Zink (2016/2017)—and therefore "ignor[ing] evidence contradicting its position"—the Service violated the fundamental administrative law principle of "substantial evidence," as well as the ESA's requirement that decisions be based on "the best scientific and commercial data available . . . ." ECF No. 1 at ¶ 89(c) (citing *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)); 16 U.S.C. § 1533(b)(1)(A). In support of this claim, Cattle Growers pointed to the Hazard Email. *See* Exh. D to Schiff Decl; ECF No. 1 at ¶ 103.

On March 7, 2022, the Service answered Cattle Growers' complaint. *See* ECF No. 10. In responding to Cattle Growers' allegations pertaining to the Service's treatment of Zink (2016/2017), the Service reproduced, in relevant part, the Hazard Email. *See* ECF No. 10, ¶ 103. The parties then stipulated to a scheduling order for the production of the administrative record and briefing on summary judgment. ECF No. 11.

On April 19, 2022, the Intervenors moved to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2). ECF No. 13. Cattle Growers and the Service then filed a Joint Motion to Modify the Scheduling Order to accommodate the Intervenors' participation. ECF No. 14. This Court granted both motions on May 5 and May 6, 2022, respectively.

On June 16, 2022, the Service produced the proposed administrative record. ECF No. 15. Pursuant to this Court's scheduling order, between July 15, 2022, and August 3, 2022, the parties conferred regarding the completeness of the record. *See* Schiff Decl. ¶¶ 19–23. During those conferrals, Cattle Growers requested that the record be completed to include three additional documents. *See* Schiff Decl. ¶¶ 18–19. These documents were (1) a list of references submitted as an appendix to Cattle Growers original petition (the "Reference List); (2) the Hazard Email; and (3) the Beatty Email. *See* Schiff Decl. ¶ 18. The Service agreed to include the Reference List in the administrative record. *See* Schiff Decl. ¶ 20. However, the Service represented that it believes the Emails are deliberative and pre-decisional, and therefore declined to include them in the administrative record. *See* Schiff Decl. ¶ 20. Cattle Growers now respectfully moves pursuant to Federal Rule of Civil Procedure 7(b), LCvR 7, and this Court's May 6, 2022, amended scheduling order, that this Court compel completion of the administrative record with the Hazard Email and Beatty Email.

## STANDARD OF REVIEW

I.     **APA Review and the Administrative Record**

The Administrative Procedure Act (APA) provides that, in reviewing agency conduct, "the court shall review the whole record or those parts of it cited by a party . . . ." 5 U.S.C. § 706. This requires the Court to review "the full administrative record that was before the [decisionmaker] at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420

(1971) (alteration added), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.'" *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (quoting 5 U.S.C. § 706)). The full administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Calloway v. Harvey*, 590 F. Supp. 2d 29, 36 (D.D.C. 2008) (quoting *Stainback v. Sec'y of the Navy*, 520 F. Supp. 2d 181, 185 (D.D.C. 2007)).

## II. Completing the Administrative Record

Although an agency is presumed to have designated the complete administrative record, *Univ. of Colorado Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015), that presumption may be overcome. "For a plaintiff to prevail on a motion to complete the record—that is, to add evidence that is properly part of the record but was excluded—she must only 'put forth concrete evidence' and 'identify reasonable, non-speculative grounds for [her] belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78–79 (D.D.C. 2018) (quoting *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016)).

## ARGUMENT

### I. The Documents Are Part of the Complete Administrative Record

#### A. The Hazard and Beatty Emails were considered by the Service

The Hazard and Beatty Emails were "directly or indirectly considered by agency decision-makers," *see Calloway*, 590 F. Supp. 2d at 36, when the Service denied the Petition. Indeed, the Emails directly "relate to the position of the agency's own experts," *Kent County, Delaware Levy Court v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992), on a key issue raised by Cattle Growers' Third

7

and Fourth Claims for relief—namely, that the Service, by refusing to meaningfully engage with Zink (2016/2017), failed to consider relevant evidence or to use the best available data. *See* ECF No. 1, ¶¶ 95–107.

That the Emails were considered by the Service in its decision-making is confirmed by the Service's handling of the FOIA request. *See* Exhs. D, E, to Schiff Decl. That request sought only those documents "relied on, directly or indirectly, by the Service as part of its decision to deny the flycatcher delisting petition." *See* Exh. A to Schiff Decl. The Service's disclosure of the Emails in response to this request therefore signals the agency's acknowledgment that the Emails were considered and were relevant. Indeed, the Emails themselves establish that they were considered by the agency. First, the subject lines on the two Emails read "SWFL petition finding comments" and "WIFL," self-identifying that the Emails relate to the Petition. *See* Exhs. D, E, to Schiff Decl. Second, the body of the Emails discusses the Service's rationale for denying the Petition, as well as Mr. Hazard's critique that Zink (2016/2017) was "not presented in the document," and "that the Service should acknowledge and include this document in our evaluation. . . ." *See* Exhs. D, E, to Schiff Decl. And third, the Emails were sent by and to the Service's own wildlife staff, who were responsible for crafting the Service's response to the Petition. *See* Exhs. D, E, to Schiff Decl.

**B.     The Service has waived any deliberative process privilege**

That the Emails represent internal staff communications does not preclude their inclusion in the administrative record. To be sure, such internal materials may sometimes be subject to the deliberative process privilege and therefore excluded from the administrative record. *See Oceana, Inc.*, 290 F. Supp. at 82. However, "the deliberative process is not absolute; it can be waived." *See UnitedHealthcare Ins. Co. v. Azar*, 316 F. Supp. 3d 339, 348 (D.D.C. 2018) (holding that the deliberative process was waived for documents released in unredacted form to the public). *See*

8

*also In re Sealed Case*, 121 F.3d 729, 741–42 (D.C. Cir. 1997) (holding that the White House waived the deliberative process privilege for specific documents when it voluntarily released those documents to "third parties outside of the White House").

Thus, inclusion of documents in the administrative record is warranted where (1) an agency has waived the deliberative process privilege, and (2) the documents in question otherwise qualify as part of the administrative record, *i.e.*, they were "considered directly or indirectly" by the agency. *See UnitedHealthcare Ins.*, 316 F. Supp. 3d at 348–49 (including in the administrative record documents that were (1) released to the public, and (2) considered by the agency). That standard is met here. The Service released the Emails through FOIA (and quoted the Hazard Email in its answer, *see* ECF No. 10, ¶ 103), thereby making the documents publicly available and waiving the privilege, *see UnitedHealthcare Ins.*, 316 F. Supp. 3d at 348; and the Emails were considered by the Service in deciding whether to deny the Petition, *see supra* Arg. Section I.A.

## CONCLUSION

This Court should grant Cattle Growers' motion to compel completion of the administrative record with the Hazard and Beatty Emails.

DATED: August 17, 2022.

Respectfully submitted,

/s/Damien M. Schiff
DAMIEN M. SCHIFF, D.D.C. No. CA00045
Email: dschiff@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

/s/Charles T. Yates
CHARLES T. YATES, Cal. Bar No. 327704
*Pro hac vice*
Email: cyates@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

PAIGE E. GILLIARD, Cal. Bar No. 330051
*Of Counsel*
Email: PGilliard@pacificlegal.org
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747

*Attorneys for Plaintiff New Mexico Cattle Growers' Association*

## CERTIFICATE OF SERVICE

I certify that I electronically filed and served the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system.

*/s/* Damien M. Schiff
DAMIEN M. SCHIFF, D.D.C. No. CA00045
Email: dschiff@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Counsel for Plaintiff*